UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-62163-CIV-DIMITROULEAS/SNOW

ACCESS FOR THE DISABLED, INC.,
a Florida corporation;
ROBERT COHEN, an individual; and
PATRICIA KENNEDY, an individual,

    Plaintiffs,

v.

KARAN INVESTMENTS, LLC,
d/b/a SUNOCO GAS STATION

    Defendant.
_____/

## CONSENT DECREE

This Consent Decree (this "Agreement") is made and entered into by and between Plaintiffs Access for the Disabled, Inc., Robert Cohen and Patricia Kennedy referred to in this Agreement as ("Plaintiffs") and KARAN INVESTMENTS, LLC and KB MART, LLC, d/b/a SUNOCO GAS STATION (hereinafter referred to as "Defendants"). The signatories to this Agreement will be referred to jointly as the "Parties." This Agreement is made as a compromise between the Parties for the complete and final settlement of their claims, differences, and causes of action with respect to the dispute described below.

### Preamble

**WHEREAS**, on or about October 6, 2011, Plaintiffs filed a lawsuit in the United States District Court for the Southern District of Florida, entitled *Access for the Disabled, Inc., Robert Cohen and Patricia Kennedy v. Karan Investments, LLC* Case No. 11-62163 (the "Action"), wherein Plaintiffs asserted claims for injunctive relief against Defendants based upon purported violations of Title III of the Americans with Disabilities Act, 42 U.S.C. 12181, *et seq.* ("ADA") and related claims for relief respecting the real property and all structures and improvements thereon located at or about 8400 W. Oakland Park Blvd., Sunrise, FL 33351 ("the Facility");

1

**WHEREAS**, Defendants deny and continue to deny the claims and allegations in the Action, and that Plaintiffs are entitled to any legal or equitable remedies;

**WHEREAS**, the Parties desire to compromise and fully and finally resolve and settle all actual and potential claims or litigation between them, to avoid the uncertainty, time and expense that would accompany such litigation;

**WHEREAS**, the Parties have agreed, without Defendants admitting liability of any kind, to enter into this Agreement pursuant to which each and every claim and/or cause of action asserted or that could have been asserted by Plaintiffs against Defendants shall be fully, forever, and finally released; and

**NOW, THEREFORE**, in consideration of the covenants and mutual promises and agreements contained herein, and other valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

### 1. Attorney's Fees, Costs and Re-Inspection Fee

1.1   Plaintiffs and Defendants shall execute this Agreement and the parties respective counsel shall prepare a Motion to Approve Settlement and to Dismiss with Prejudice to be held in escrow until the Agreement is fully executed and the payment of attorney's fees and costs due, pursuant to paragraph 1.1 of this Agreement is paid. Defendant agrees to pay a total settlement amount of **$3,600.00** comprising of attorney's fees and costs and which includes a $300.00 re-inspection fee. All payments shall be made payable to "**Schapiro Law Group, P.L.**," with an indication that the check is issued "in settlement of Case No. 11-CV-62163. Plaintiff's Counsel's Federal Tax ID Number is 45-3337982.

1.2   Upon delivery to Plaintiffs' Counsel of the fully executed Agreement and payment of $3,600.00 pursuant to paragraph 1.1 above, Plaintiffs' counsel shall promptly file the Motion to Approve Settlement and to Dismiss with Prejudice, attaching a copy of the fully executed Agreement and proposed order of dismissal with prejudice.

1.3   Plaintiffs agree to take any and all additional steps required to obtain dismissal of the Action as set forth above. Except as set forth herein, each Party shall be responsible for payment of his or its own litigation expenses, costs and attorneys' fees.

1.4   Plaintiffs and Plaintiffs' Counsel acknowledge and agree that they are solely and entirely responsible for the payment and discharge of all federal, state, and local taxes, if any, that may, at any time, be found to be due upon or as a result of the Payment hereunder. Plaintiffs and Plaintiffs'

Counsel, and each of them, expressly acknowledge that Defendants have not made any representations regarding the tax consequences of any Payment received pursuant to this Agreement.

## 2. Alterations or Modifications to the Facilities

2.1     The Parties hereto acknowledge and stipulate that Defendants will modify or alter the items expressly identified by and in the manner specified in Exhibit "A." The repairs or modifications identified in Exhibit "A" shall be completed in all respects no later than six (6) months from the effective date of the execution of this Agreement, which shall be the date indicated by the last signatory to the Agreement. The time period for Completion by Defendant shall be subject to acts of God, force majeure, or events beyond the control of Defendant, such as inability to obtain building or zoning permits, failure of the city/county or state inspectors to make inspections, contractor defaults, work stoppages or commenced construction/modifications which supersede the agreed planned modifications or otherwise render the agreed action items moot. In the event of such unforeseen circumstances, the time period for completion of the alterations or modifications in Exhibit "A" shall be extended by the number of days reasonably attributable to such delay-causing event as long as Defendants provide notice to Plaintiffs' Counsel prior to the original completion date set forth above.

2.2     The Parties stipulate that upon completion of the removal of the barriers and the alterations and modifications set forth in Exhibit "A", Defendants shall provide written notice by certified or registered mail to Plaintiffs' Counsel.

2.3     If the modifications or alterations described in Exhibit "A" conflict with the Florida Statutes, building construction standards, county or city regulations or codes, or any other statute, act, law, rule, regulation, code, standard, or state or local governing body whatsoever, Defendants shall attempt to identify and implement a reasonable alternative solution or variance should a readily achievable one exist. If any such alternative solution is applied by Defendants, Defendants agree to notify Plaintiffs' Counsel of same.

2.4     Right to Inspection: The Parties stipulate that Plaintiffs shall have sixty (60) days, after Plaintiffs' Counsel receives notice of the completion of the alterations or modifications described in Exhibit "A," to inspect the Facility to ensure that Defendant have completed the repairs or modifications described in Exhibit "A." Defendant shall provide Plaintiffs or their representative reasonable access to the Facility to verify completion of the work described in Exhibit "A." The Plaintiffs' inspection contemplated herein shall be coordinated with the Defendant so that the inspection occurs at a

time that minimizes the interruption or intrusion to Defendant. The inspection shall be done by Douglas S. Schapiro, Esq.

2.5     If an inspection contemplated herein reveals that any of the alterations or modifications described in Exhibit "A" have not been performed, or have been performed in a manner that the Plaintiffs believes does not comply with, moot or supersede Exhibit "A," Plaintiffs shall send written notification to Defendant via certified mail. The description of the allegedly deficient or incomplete alteration(s) and/or modification(s) contained within the written notice shall be sufficiently detailed so that the Defendant can identify why the Plaintiffs alleges that the alteration(s) and/or modification(s) is deficient and how the allegedly deficient or incomplete item can be cured. Defendant shall have ninety (90) days from the date of receipt of the written notice to complete the item(s) identified in the written notice to the satisfaction of Plaintiffs or show cause as to why Plaintiffs are incorrect in his assessment of the violations.

### 3. Enforcement Provisions

3.1     In the event the alterations and modifications described in Exhibit "A" are not completed in the time frame set forth in this Agreement, Plaintiffs shall be entitled to obtain injunctive relief based on the modifications detailed in Exhibit "A."

### 4. Compromise

4.1     The Parties agree and acknowledge that this Agreement is the result of a compromise and shall never be construed as an admission of any liability, wrongdoing, or responsibility on the part of the Released Parties (as defined in section 5.1 below). The Released Parties expressly deny any such liability, wrongdoing, or responsibility.

### 5. Release Given By Plaintiff in Favor of Defendants

5.1     In exchange for the good and valuable consideration set forth herein, Plaintiffs and their respective agents, members, successors, assigns, parent entities, subsidiary entities, heirs, officers, predecessors, directors, affiliated persons and/or entities, and anyone claiming by or through them (collectively, the "Releasing Parties"), hereby fully and finally release, acquit, satisfy, and discharge Defendants, and each of the Defendants' respective agents, predecessors, successors, assigns, heirs, parent entities, subsidiary entities, landlords, officers, directors, shareholders, employees, attorneys, affiliated persons or entities, including without limitation: (a) all of Defendants' respective parents, predecessors, successors, assignees, subsidiaries, affiliates and related entities, including without limitation each Defendant, and

its respective members, trustees, directors, employees, attorneys, and agents, and any and all other entities or person(s) related to or affiliated with them and all current and former tenants or lessees of the Facilities (collectively, the "Released Parties"), of and from any and all legal or equitable claims, demands, liabilities, debts, judgments, damages, expenses, actions, or causes of action of any kind that the Releasing Parties and each of them have or may have, whether known or unknown, including without limitation any and all claims arising under Title III of the ADA and/or any other federal, state, or local law governing access features and policies for persons with disabilities at public accommodations whether before any federal, state, or local agency, court of law, or in any other forum, and any and all claims that could have been alleged in the Action. This release also includes all claims for attorney's fees and costs, expert fees and costs, or any other fee or cost incurred to date, with the exception of any future action taken by any of the Parties to enforce the terms of this Agreement.

    5.2    As a material inducement for Defendants to enter into this Agreement, Plaintiffs represent and warrant that they have made a full inspection of the interior areas, exterior and grounds of the Facility and are not aware of any pending tort, contract, or other legal claims against Defendants, other than the specific claims brought in this Action under Title III of the ADA, which are released under this Agreement.

    5.3    Plaintiffs represent and warrant that no portion of any of the matters released by this Agreement and no portion of any recovery or settlement to which they might be entitled have been assigned or transferred to any other person, firm, or corporation not a Party to this Agreement, in any manner, including by way of subrogation or operation of law or otherwise.

## 6. Notice

    6.1    Unless otherwise provided in this Agreement or by law, all notices or other communications required or permitted by this Agreement or by law to be served on or delivered to any Party to this Agreement shall be delivered as follows:

To Defendants:

Dion J. Cassata, Esq.
320 S.E. 10th Court
Fort Lauderdale, FL 33316

To Plaintiffs:

Douglas S. Schapiro, Esq.

Schapiro Law Group, P.L.
7050 W. Palmetto Park Road
Suite 15-271
Boca Raton, FL 33433

    6.2    A Party may change such address for the purpose of this paragraph by giving timely written notice of such change to all other Parties to this Agreement in the manner provided in this paragraph.

### 7. Free Will

    7.1    The Parties acknowledge that each has had an opportunity to consult with counsel of their own choosing concerning the meaning, import, and legal significance of this Agreement, and that each has done so to the extent desired. In addition, the Parties acknowledge that they each have read this Agreement, as signified by their signatures hereto, and are voluntarily executing the same after having had the opportunity to seek the advice of counsel for the purposes and consideration herein expressed.

### 8. Miscellaneous Terms and Conditions

    8.1    This Agreement contains the complete settlement agreement between the Parties. Any and all prior agreements, representations, negotiations, and understandings between the Parties, oral or written, express or implied, with respect to the subject matter hereof are hereby superseded and merged herein.

    8.2    This Agreement may be executed in counterparts or by copies transmitted by facsimile or email, all of which shall be given the same force and effect as the original.

    8.3    This Agreement may be modified only by a written document signed by all of the Parties. No waiver of this Agreement or of any of the promises, obligations, terms, or conditions hereof shall be valid unless it is written and signed by the Party against whom the waiver is to be enforced.

    8.4    This Agreement shall be binding upon the Parties hereto, their predecessors, successors, parents, subsidiaries, affiliates, assigns, agents, directors, attorneys, officers, families, heirs, spouses, and employees.

    8.5    If any provision of this Agreement shall be finally determined to be invalid or unenforceable under applicable law by a court of competent jurisdiction, that part shall be ineffective to the extent of such invalidity or unenforceability only, without in any way affecting the remaining parts of said provision or the remaining provisions of this Agreement.

8.6     The Parties acknowledge that they have reviewed this Agreement in its entirety and have had a full opportunity to negotiate its terms, and therefore waive all applicable rules of construction that any provision of this Agreement should be construed against its drafter and agree that all provisions of the Agreement shall be construed as a whole, according to the fair meaning of the language used.

8.7     Plaintiffs represent that, other than the Action, they have not filed or authorized the filing of any complaints, charges, or lawsuits against Defendant with any federal, state, or local court, governmental agency, or administrative agency relating to the subject Facilities, and that if, unbeknownst to Plaintiffs, such a complaint, charge, or lawsuit has been filed on their behalf, he or it will use his or its best efforts to cause it immediately to be withdrawn and dismissed with prejudice.

8.8     The parties and their Counsel agree to execute any and all further documents and perform any and all further acts reasonably necessary or useful in carrying out the provisions and purposes of this Agreement.

8.9     In any action or other proceeding to enforce rights under this Agreement, the prevailing Party shall recover from the losing party all attorneys' fees, litigation expenses, and costs.

8.10    The Parties agree that any ambiguities in this Agreement shall not be construed against the drafter of the Agreement.

8.11    The Parties acknowledge that all Recitals and/or "WHEREAS" clauses preceding paragraph 1 are incorporated as a material part of this Stipulation for Settlement.

8.12    This Agreement is entered into in, and shall be governed by and construed and interpreted in accordance with the substantive laws of, the State of Florida.

**THIS SPACE INTENTIONALLY LEFT BLANK UNTIL BOTTOM OF PAGE**

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date(s) set forth below:

DATED: January 20, 2012

_____
Robert Cohen

DATED: January __, 2012

_____
Patricia Kennedy

DATED: January 20, 2012

_____
For Access for the Disabled, Inc.
By:
Title:

DATED: January __, 2012

_____
For Karan Investments, LLC

By:
Title:

DATED: January __, 2012

_____
For KB Mart, LLC

By:
Title:

8

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date(s) set forth below:

DATED: January __, 2012

_____
Robert Cohen

DATED: January 19, 2012

*[signature: Patricia L. Kennedy]*
Patricia Kennedy

DATED: January __, 2012

_____
For Access for the Disabled, Inc.
By:
Title:

DATED: January __, 2012

_____
For Karan Investments, LLC

By:
Title:

DATED: January __, 2012

_____
For KB Mart, LLC

By:
Title:

8

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date(s) set forth below:

DATED: January __, 2012

_____
Robert Cohen

DATED: January __, 2012

_____
Patricia Kennedy

DATED: January __, 2012

_____
For Access for the Disabled, Inc.
By:
Title:

DATED: January 20, 2012

_____
For Karan Investments, LLC
By:
Title: OWNER ALY C. KARAN

DATED: January __, 2012

_____
For KB Mart, LLC

By:
Title:



8

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date(s) set forth below:

DATED: January ___, 2012

_____
Robert Cohen

DATED: January ___, 2012

_____
Patricia Kennedy

DATED: January ___, 2012

_____
For Access for the Disabled, Inc.
By:
Title:

DATED: January ___, 2012

_____
For Karan Investments, LLC

By:
Title:

DATED: January 19, 2012

_____
For KB Mart, LLC

By: Guillermo Hernandez
Title: Manager

# EXHIBIT A

## "Action Items"

1. Item/location at issue: single designated handicapped parking spot to the southwest of the building.

    Action: -extend the blue painted aisle from adjacent to the parking space to the ramp of the west entrance door of the store;

    -even out any uneven patches of asphalt upon which the aisle is marked;

Other comments: Plaintiff agrees that the width/length and location of the handicapped space is acceptable and that one such space is sufficient for this business/property. The parties agree the aisle (when completed as planned) will be appropriate and in compliance with sections 4.3.3 to 4.3.8 of the ADAAG and all other applicable laws and regulations.

2. Item/location at issue: west entrance to the building.

    Action: -enlarge/widen existing concrete wheelchair ramp leading to west door. Enlarge the width of the existing ramp by 12 inches; add "edge protection" of at least a 2 x 2 inch projection. Remedy the break in the concrete at the top of the ramp such that there is no vertical protrusion rise in excess of ¼ inch.

Comments: The existing yellow traffic barrier pole need not be moved. No other ADA-related violations are noted at this entrance.

3. Item/location at issue: ensure aisle/pathway widths within the store are at least 36" wide.

    Action: - maintain an access aisle of at least 36 inches in width and ensure a policy of maintaining such access aisles throughout the publically accessible elements of the store is maintained.

4. Item/location at issue:    cashier's counter

    Action: -afix a sign in a visible place that advises, "Disabled Assistance Available Upon Request," or the equivalent. The

sign should have a universal symbol of disability.
Going forward, the cashier should have a clipboard or the equivalent to give to a disabled patron so that the patron can sign receipts. The parties agree that with this reasonable accommodation, the existing front counter(s) need not be altered.

5. Item/location at issue: exterior ramp to public restroom

Action: -remove the ladder laying on ground by side of building. Remove the algae and standing moisture on ground from downspout. Concerning the algae, move the downspout pipe so that the algae once removed will not accumulate there. Also, any algae which should accumulate in the future needs to be cleaned promptly. Enlarge/widen existing concrete wheelchair ramp leading to landing by restroom door. Enlarge the width of the existing ramp by 12 inches; add "edge protection" of at least a 2 x 2 inch projection. Flatten out any adjacent asphalt. These changes should result in the ramp complying with all aspects of section 4.8 of the ADAAG.

6. Item/location at issue: exterior public restroom

Action: -install lever door handles. Install sign which complies with ADAAG 4.30.4, 4.30.5, and 4.30.6.indicating handicap accessibility. Even out/ level the threshold of bathroom door. Install a grab bar behind toilet. Lower toilet paper and paper towels dispensers so that the operational mechanisms of each are located at a maximum height of 48 inches from the finished floor. The threshold must comply with section 4.13.2 of the ADAAG in that the threshold must be beveled at a 1:2 slope and not exceed ½ inch in height. There must be two grab bars and such grab bars must be compliant with section 4.16.4 of the ADAAG.